## NICHOLSON v. UNITED STATES.

### No. 8217.

District Court, S. D. California, Central Division.

Dec. 2, 1938.

Dempsey & Mackay and Arthur McGregor, all of Los Angeles, Cal., for plaintiff.

Ben Harrison, U. S. Atty., and Edward H. Mitchell, Sp. Asst. U. S. Atty., all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

Emily J. Nicholson, as the sole heir at law and distributee of the estate of Willmer D. Nicholson, is seeking to recover $886.08 paid by her as deficiency estate tax and interest. Her husband, Willmer D. Nicholson, died on June 2, 1926. His estate was duly administered and on January 6, 1930, all the property in the estate was distributed to plaintiff as the only heir at law of the decedent by order of the Superior Court of the State of California in and for the County of Los Angeles. On April 24, 1930, Edward D. Suter, the administrator of the estate, was discharged by the Court. Within the time required by law the administrator filed a federal estate tax return which showed no tax. On examination of the return, the Commissioner assessed a deficiency estate tax which, with interest, aggregated $1078.81. This was paid on December 6, 1933. A refund of a portion of the tax paid was made, which reduced it to the amount sought to be recovered.

The claim of the United States to the deficiency estate tax is made under Section 302 (d) of the Revenue Act of 1924, 26 U.S.C.A. § 411 note. It is based on the inclusion in the gross estate of property conveyed by the decedent and the plaintiff on January 2, 1923, through a declaration of trust. The instrument conveyed the property to the decedent, the plaintiff and Gordon J. Nicholson as trustees, the beneficiaries being the three named and other children of the deceased and plaintiff, making a total of nine who were to benefit in equal shares.

The Government attempts to justify this inclusion by contending, first, that the declaration of trust was made by the deceased in contemplation of death.

This claim is not borne out either by the instrument or by the facts surrounding its execution.

It is to be borne in mind that the trust was created not only by the deceased but by the plaintiff also. It is undisputed that deeds transferring to the trustees the specific property enumerated in it were actually executed and delivered to an attorney, for the benefit of the trust estate. Provisions in the declaration of trust contemplating dispositions upon the donor's death or the death of any of the beneficiaries, which the Government presses strongly in support of its view, are just the ordinary ones found in such instruments.

As said by Mr. Justice McReynolds in the latest case on the subject, Colorado National Bank of Denver v. Commissioner of Internal Revenue, 59 S.Ct. 48, 83 L.Ed. —, decided November 7, 1938 [page 49]: "The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was 'in contemplation of death.' Broadly speaking, thoughtful men habitually act with regard to ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute."

Death did not occur until more than three years after the trust estate was created. The good health of the donor at the time of the creation of the trust, when he was 61 years old, is conceded by the Government. As stated by the family physician, death resulted at the age of 64, not from a long, lingering disease, but from an acute condition which turned into chronic within a week. The record discloses a strong, vigorous man, who had spent most of his life-time on the farm. He did not discuss death even with his counsel, when contemplating the arrangement that would give to his whole family the enjoyment of the money which was coming in through oil discovery. We have here the parents of a large family, seeking, during their life-time, to give to their children the benefits of the wealth they had accumulated. The evidence shows undisputedly a cohesive family, in which the parents constantly helped the children as their needs required. Under the circumstances, the creation of a trust appears to be the most logical method they could have devised for sharing their affluence with their own.

Nor is there substantial evidence in the record to sustain the other contention of the Government, that the donor retained such control as to make the trust ineffective. The fundamental criterion, the power to modify, amend or revoke the transfer (Porter v. Commissioner, 1933, 288 U.S. 436, 53 S.Ct. 451, 77 L. Ed. 880; Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Helvering v. St. Louis Union Trust Co., 1935, 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Bingham v. United States, 1935, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160; Helvering v. Bullard, 1938, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852; Mackay v. Commissioner, 2 Cir.1938, 94 F.2d 558), is ab-

sent. Power to revoke the trust is given not to the donors but to the trustees. The fact that the donor himself is one of the trustees does not alter the situation. Reinecke v. Northern Trust Co., supra; Becker v. St. Louis Union Trust Co., 1935, 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

The declaration of trust was followed by deeds properly executed and delivered to an agent, for the trust. The delivery was sufficient, under the law of California, as a constructive delivery. California Civil Code, § 1059.

There are, it is true, facts which, in themselves, might lend support to the idea of retention of greater control than is usual in transfers inter vivos. The deceased did not give a strict accounting for the amounts he withdrew. He charged against the income of the trust estate losses from ventures which, to all intents and purposes, seem to have been his own and not those of the trust. Experience with trusts of this type, established for the benefit of a small, closely related family group, shows that facts of this character, which might have great significance as to intention, when dealing with strangers, lose their significance where we are dealing with parents, who give their substance for the benefit of the family, and beneficiaries, who are their children.

Children who receive the benefit of their parents' bounty, running into thousands of dollars, especially when, as here, they are young persons, would not be inclined to seek a strict accounting of their share, while the giver of the bounty is alive. As one of the sons rightly said at the trial, in answer to a question propounded by the court, when he came to preparing the income tax returns, he never questioned any expenditures which his father said had been incurred for the benefit of the trust and should be deducted.

I do not think the mother should be penalized because the beneficiaries under this trust acted in the manner of dutiful children. It would place a penalty on what the world has always considered a virtue.

Separate books were kept for the trust estate. Income tax returns were made for the trust, as a trust. Attempts were made to equalize shares. The trust indenture was recorded. The fact that the deeds were not recorded and that the property continued to be assessed to the original owner was explained sufficiently by the attorney who drew the indenture. He stated that the donors had requested that there be no recording, for fear that a recordation "might look bad" from a business standpoint.

On the whole, we are satisfied that the trust estate was not a part of the gross estate of Willmer D. Nicholson at the time of his death, so as to make it taxable under Section 302 (d) of the Revenue Act of 1924.

Judgment will, therefore, be for the plaintiff. Let findings and judgment be prepared by the plaintiff under Rule 8 of the Rules of Procedure for the District Court of the United States for the Southern District of California.