## COMMISSIONER OF INTERNAL REVENUE v. FLANDERS et al.

### No. 190.

Circuit Court of Appeals, Second Circuit.

April 15, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

Frederic A. Burlingame, Charles J. Nourse, Arthur E. Pettit, and James Hendrick Terry, all of New York City, and Albert L. Hopkins and Anderson A. Owen, both of Chicago, Ill., for respondents.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

Edward Severin Clark died on September 19, 1933. Long before his death he had set up two trusts which are known, respectively, as Trust No. 3 and Trust No. 4. Concededly neither trust was made in contemplation of death; but the commissioner ruled that the settlor retained sufficient power and interest with respect to the property of each trust to justify the inclusion of its value as part of the decedent's gross estate under section 302 of the Revenue Act of 1926, 44 Stat. 70, as amended in 1932, 47 Stat. 279, 26 U.S.C.A.Int.Rev.Acts, page 226. The Board reversed the commissioner's ruling, thereby eliminating an estate tax deficiency of more than two and a half million dollars. Whether the Board's decision was correct is the issue presented by this appeal. No question as to the values of the trust properties is before us, issues relating to values having been severed by order of the Board to await determination of the taxability of the trusts.

The trust indenture of Trust No. 3 was delivered on June 9, 1910. The trust was to terminate upon the death of the settlor. The trustees were to pay him the net income for life, and upon his death were to deliver the principal to his surviving issue or, if none, to his surviving brothers and the issue of any deceased brother, in equal shares per stirpes. The property transferred was all stock dividends that might thereafter be declared upon those shares of stock of the Singer Manufacturing Company which were then held in trust for the settlor under the will of his father, Alfred Corning Clark. On June 16, 1910 the Singer Company declared a stock dividend payable forthwith, and on the following day the trustees of Trust No. 3 received 21,283½ shares of Singer stock. On November 14, 1919 Edward Severin Clark conveyed to the trustees an additional one-half share. In December 1920 another stock dividend was declared under which the trustees received 21,284 shares more. At the date of the settlor's death the property of the trust consisted of the aforesaid 42,568 shares of Singer stock. At no time was any other property held by the trustees as principal of Trust No. 3. The settlor was never married, had no issue and was survived by his three brothers. On April 1, 1923, one of the original trustees resigned and Stephen Carlton Clark, one of the settlor's brothers, became a successor trustee in accordance with the provisions of the trust indenture and has since continued as a trustee.

Shares of stock of the Singer Manufacturing Company were also held in trust for each of the other sons of Alfred Corning Clark, and each executed a trust indenture similar to that of the Edward Severin Clark Trust No. 3. Unless all four of the sons had created such trusts no stock dividend would have been declared by the Singer Company in June 1910. The trustees of the trusts created by the will of Alfred Corning Clark were the same persons named as trustees in the Edward Severin Clark Trust No. 3 and the three similar trusts executed by the settlor's three brothers, and the purpose of all parties was to

keep the Singer stock in which the four Clark brothers were beneficially interested held together as a voting unit in order to retain in the Clark family and said trustees control of the corporation.

The trust indenture of the Edward Severin Clark Trust No. 4 was executed in May 1914 and delivered on or before August 23, 1916. Trust No. 4 was to continue during the lives of the settlor's younger brothers, Robert Sterling Clark and Frederick Ambrose Clark, and the survivor. The net income was to be paid to the settlor for life, with remainders over. Upon termination of the trust the principal was to be delivered to the settlor, if living; otherwise to his issue or his brothers and their issue, as in Trust No. 3. The property transferred by Trust No. 4 was all dividends in the form of capital stock of subsidiary corporations of the Singer Manufacturing Company that might thereafter be declared upon the shares of Singer stock held in trust for the settlor under his father's will or Trust No. 3. On July 19, 1917, the Singer Company declared a dividend consisting of stock of the Singer Manufacturing Company, Limited, a British corporation, and by reason thereof the trustees of Trust No. 4 received 106,417½ shares of stock of said British subsidiary. In December 1920 the Singer Company distributed as a dividend preferred stock of International Securities Corporation, another subsidiary. Of such preferred stock the trustees of Trust No. 4 received 42,568 shares. No other property was at any time added to said Trust No. 4 and none of the aforesaid shares was at any time disposed of by the trustees. The trustees of Trust No. 4 are the same persons who are trustees of Trust No. 3.

Each of the three brothers of Edward Severin Clark executed a trust indenture similar to his Trust No. 4. Unless they had done so the Singer Company would not have distributed as a dividend stock of its subsidiary corporations.

The trust indenture of Trust No. 3 contained the following provision: "The party of the first part hereto deems it for the best interest of himself and of the other members of his family, that the shares of and interest in the capital stock of The Singer Manufacturing Company that may be held in trust under this agreement should not be sold and disposed of; nevertheless, as emergencies may arise or changes take place in the affairs of that company which may render it advisable that said shares of and interest in said capital stock should be sold, he hereby fully authorizes and empowers said trustees, their survivor and successors, in the exercise of a sound discretion and judgment, to sell and dispose of the whole or any part of said shares and interest, but only after first obtaining the consent of the party of the first part in writing, to make such sale. In case of any such sale or sales, then said trustees shall transfer, pay over and deliver the proceeds thereof to the party of the first part hereto, to be the absolute property of the party of the first part, free from any trusts whatever, anything herein contained to the contrary notwithstanding."

A similar provision was contained in Trust No. 4. It was stipulated that at no time since the creation of either trust has any emergency arisen or change taken place in the affairs of the Singer Company (Trust No. 3), or of its subsidiaries (Trust No. 4), which rendered it advisable for the trustees of Trust No. 3 or No. 4 to sell any part of the property held in trust; that no trustee ever thought it advisable to sell; and that none of the trust property ever was sold.

■ Section 302(d) of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 228, set forth in the margin,[1] provides for inclu-

---

[1] "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*    \*    \*    \*    \*    \*

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death, made within two years prior to his death but after the enactment of this Act without such a consideration and affecting the

sion in the gross estate of a decedent of property transferred by him in trust where the enjoyment thereof was subject at his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person to alter, amend, or revoke the trust. The provision above quoted respecting sales by the trustees with the written consent of the decedent is claimed by the commissioner to render the value of the corpus of each trust taxable as part of the decedent's gross estate. We agree with the Board's decision that it did not.

Assuming without decision that the settlor's power to consent to a sale by the trustees was a power, exercisable in conjunction with them, "to alter, amend, or revoke" the trust, it was, in the opinion of a majority of the court, conditioned upon the exercise by the trustees of a discretion dependent on the existence of an emergency or change in the affairs of the Singer Company in Trust No. 3, or in the affairs of the subsidiaries in Trust No. 4. The Board found, in accordance with the stipulation, that such conditions never happened. Consequently section 302(d) is inapplicable. See Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, 858; Day v. Commissioner, 3 Cir., 92 F.2d 179; Patterson v. Commissioner, 36 B.T.A. 407. However, decision may be rested upon a ground on which we all agree. At no time after April 1, 1923, could the settlor's power have been exercised except in conjunction with Stephen Carlton Clark, who was not only one of the trustees but also one of the beneficiaries of the trust. As such

beneficiary his interest was adverse to any sale, the proceeds of which must be paid to the settlor. Under such circumstances to apply section 302 (d) to a trust created prior to the Revenue Act of 1924, 26 U. S.C.A.Int.Rev.Acts, page 228, in which the section first appeared, would offend the Fifth Amendment. Helvering v. Helmholz, 296 U.S. 93, 98, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 102, 56 S.Ct. 66, 80 L.Ed. 80; Mackay v. Commissioner, 2 Cir., 94 F.2d 558, 562.

We agree also with the Board's conclusion that Trust No. 3 is not taxable under section 302(c) as a transfer to the remaindermen intended to take effect in possession or enjoyment at or after death.[2] Since the trust was created prior to March 3, 1931, it is conceded that the corpus would not be includible in the settlor's gross estate merely because of the reservation of the life use of the income. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L. Ed. 858. It is urged, however, that the settlor's power to consent to a sale by the trustees and in such event to obtain the proceeds of sale is equivalent to a power to revoke the trust, and because such power was terminated by the settlor's death, the remainder interests are within section 302(c). Since subsection (d) deals specifically with powers to revoke a trust, it would seem unlikely that subsection (c) also embraces that subject. See Mackay v. Commissioner, 2 Cir., 94 F.2d 558, 561; Tait v. Safe Deposit & Trust Co., 4 Cir., 74 F.2d 851, 858. But however that may be, we think the transfer to the remaindermen was complete, so far as the settlor was

interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall be deemed and held to have been made in contemplation of death within the meaning of this title; * * *."

[2] Section 302(c) of the Revenue Act of 1926 as amended by section 803(a) of the Revenue Act of 1932 reads as follows: "(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has

retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. * * *"

concerned, before his death, since after April 1, 1923 the alleged power could not be exercised without the concurrence of an adversely interested beneficiary. To apply subsection (c) to such a situation would run foul of the same constitutional objections as would the retroactive application of subsection (d)—a subject already discussed. See Nichols v. Coolidge, 274 U. S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A. L.R. 1081; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; see, also, Reg. 70, 1929 ed., Arts. 15, 17. We are satisfied that the Board was correct in ruling that the value of the corpus of Trust No. 3 was not includible in the gross estate of the decedent.

A different situation is presented by Trust No. 4. There the settlor reserved a remainder contingent upon his surviving his two younger brothers whose lives measured the duration of the trust. In view of the decision of the Supreme Court in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. ——, 125 A.L.R. 1368, handed down January 29, 1940,[3] we hold the settlor's possibility of reverter a taxable interest under section 302(c). It is urged that the Hallock case involved a trust created after the estate tax law was enacted; and that to apply the statute retroactively to Trust No. 4 would be unconstitutional, as shown by Nichols v. Coolidge, supra. However, in the Coolidge case the settlor's death determined his life estate but did not take from him an interest in the corpus or augment the estate created in the remaindermen by the trust deed. In the case at bar, the remaindermen would have taken nothing had the settlor survived the term of the trust; his death was the event that destroyed his possibility of reverter and brought into being remainders of which they had full dominion. Such shifting of economic benefit renders the corpus of the trust taxable under the latest utterance of the Supreme Court.

Finally, the respondents argue that the whole purpose of the statute is to tax testamentary transfers by a decedent or transfers in substitution therefor, and that the decedent never transferred into Trust No. 4 any property which ever was or could have been his or which he was free to enjoy or dispose of. It is true that the Singer Company would not have distributed the stock of its subsidiaries unless the decedent had executed Trust No. 4 and his three brothers had created similar trusts. Nevertheless, when the stock was distributed by the Singer Company the decedent's rights with respect to it were fixed by the terms of Trust No. 4, which he set up. The tax in question is imposed on the basis of the rights so fixed. Without his assignment there could have been no trust; he supplied the corpus. That the settlor would not have had such rights unless he and his brothers had executed the trust deeds before the dividends were voted, appears to us an irrelevant consideration.

The order is reversed and the cause remanded to the Board with instructions to include in the decedent's gross estate the value of the decedent's interest in the corpus of Trust No. 4.

---

[3] See Inter Vivos Transfers and the Federal Estate Tax, 49 Yale L.J. 1118.