## MILLARD v. MALONEY.
### Civ. A. No. 704.

District Court, D. New Jersey.

Dec. 12, 1940.

McCarter, English & Egner and George W. C. McCarter, all of Newark, N. J. (Knowles & Hack and Otto A. Hack, all of New York City, of counsel), for plaintiff.

William F. Smith, Acting U. S. Atty., Thorn Lord, Asst. U. S. Atty., both of Trenton, N. J., and James P. Garland, Sp. Asst. to Atty. Gen., for the Government.

FORMAN, District Judge.

This action is brought by the plaintiff, James C. B. Millard, as executor of the estate of Jay Gould II, deceased, against the defendant, Harry L. Maloney, Collector of Internal Revenue for the First District of New Jersey, to recover excess payment of federal estate taxes.

The decedent's grandfather, Jay Gould I, died on December 2, 1892, and devised the residue of his estate in trust to be divided into six equal shares for the benefit of his six surviving children, George, Helen, Edwin, Howard, Anna and Frank. George, Helen, Edwin and Howard were designated trustees thereunder to hold one of such equal shares for each of the six children and pay the income to him or her for life, and upon his or her death to pay over the remainder to his or her issue in such proportions as the life tenant should by will appoint, and in default of appointment to the issue per stirpes, and if any one of the life tenants died without issue then his or her share to go to his or her surviving brothers and sisters or the issue of any surviving brother and sister who had died leaving issue.

George Gould, one of the life tenants and trustees of Jay Gould I, had, among other children, a son, Jay Gould II, who became financially indebted to his father. The father feared that this son would dissipate all of his wealth and prevailed upon him to execute a deed of trust to S. N. Rice and the Commercial Trust Company of New Jersey as Trustees, conveying his expectancy in the estate of his grandfather, Jay Gould I. This indenture was executed on October 19, 1922. It provided that the trustees should pay the income of the trust funds to Jay Gould II during his life and upon his death should "pay over, convey, transfer and deliver the principal of the trust fund * * * to the lawful descendants of the party of the first part in such proportions as the party of the first part shall, in and by his last Will and Testament appoint, and in case of failure to make such testamentary appointment, then to such descendants absolutely, in equal shares, per stirpes and not per capita, * * *. It is understood and agreed, however, anything herein contained to the contrary, notwithstanding, that the party of the first part may by Will charge the trust fund with the payment of the income of said fund or any part thereof, to the use, and for the benefit of the wife of the party of the first part, during her life or for any shorter period."

This indenture was amended November 10, 1922 to provide that the trustees thereunder should repay to the estate of George Gould the amount of money Jay Gould II owed his father.

On May 16, 1923 George Gould died and his seven surviving children, including Jay Gould II, became entitled to the principal of the trust fund established by Jay Gould I, and the share therein of Jay Gould II passed to his trustees under his trust agreement of 1922.

In the year 1916 the estate of Jay Gould I was the subject of an action in the Supreme Court of the State of New York entitled Gould v. Gould, involving objec-

tions to the account offered, and allegations were made concerning surcharges aggregating approximately $40,000,000. After many years of litigation and after the death of George J. Gould, the parties in interest agreed to compromise their respective claims against each other.

On May 21, 1927 judgment was entered in that action approving the compromise settlement which provided that "* * * Jay Gould * * * and their [his] respective executors and administrators" should receive from Edwin Gould, Helen G. Shepard and Howard Gould a definite sum "annually until the death of either Howard Gould or Helen G. Shepard and thereafter and until the death of the survivor of said Howard Gould and Helen G. Shepard" a certain reduced amount.

Jay Gould II received his share of the annual payments under the above settlement until his death on January 26, 1935. Helen G. Shepard and Howard Gould survived Jay Gould II, and since his death these annual payments have been made to the plaintiff, his executor.

Jay Gould II left a will in which he charged the principal of the trust fund created by him in 1922 with the payment of the entire income accruing after his death to his wife. It also provided that the residue of the estate with certain limitations should go to his wife.

Neither the amount of tax levied upon the estate derived through the deed of trust nor by reason of the compromise judgment in the New York Supreme Court is questioned. Only the following issues are before us: (1) Was the value of the corpus of the trust created by Jay Gould II in 1922 properly included in the gross estate for federal tax purposes under Section 302 (d) of the Revenue Act of 1926, as amended? (2) Was the value of decedent's interest in the trust estate of his deceased grandfather, Jay Gould I, as determined by a consent decree entered by the Supreme Court of New York on May 31, 1927 (or as termed by plaintiff, "the commuted value of certain payments payable to the plaintiff as executor") properly included in decedent's gross estate for federal estate tax purposes?

Counsels' argument with relation to the first issue resolves itself into the application of the proper estate tax statute. Since the decedent's trust was created in 1922, plaintiff insists that the Revenue Act of 1921, which was in effect at the time of the execution of the trust, is controlling. The material parts of that Act provide as follows:

"That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth." 42 Stat. 278, § 402 (c).

The statute relied upon by defendant first appeared in the Revenue Act of 1924, and it provides as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *." § 302 (d), 26 U.S.C.A. Int.Rev.Acts, page 67.

Plaintiff asserts that the transfer of 1922 was absolute and irrevocable, and was not made with the intent to take effect in possession or enjoyment at or after death within the meaning of the Revenue Act of 1921.

The defendant does not contend that this trust fund would be taxable under the Act of 1921, but asserts taxability under the Act of 1924, because the decedent reserved to himself the power to alter by appointment the proportion of the trust fund to be paid to the beneficiaries.

In the case of Cover v. Burnet, 60 App. D.C. 303, 53 F.2d 915, the decedent in 1918 set up a trust reserving to himself "the right, at any time * * * during my [his] life, to alter, change, or modify the trusts * * * created, without the right to withdraw any part of the principal * * *."

The decedent died March 26, 1926, and the government attempted to tax the trust fund as a transfer in contemplation of death (Section 302 (c), Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227), because of the reservation contained in the instrument, and for the same reason it attempted to tax under Section 302 (d). See same section of Revenue Act of 1924, supra. The court disallowed this tax, and stated: "We do not agree with this claim, for it is expressly stipulated in the reservation that the grantor shall have no right thereafter to withdraw any part of the principal from the trust. In other words, the grantor reserved no power to repossess himself at any time of any part of the principal of the fund, nor to withdraw the same from the beneficiaries who were to receive it under the terms of the trust instrument." 53 F.2d 915, 916.

In the case of Brady v. Ham, 1 Cir., 45 F.2d 454, 455, the decedent in 1911 set up a trust fund reserving to herself power "to change and alter any or all of the trusts * * * set forth, [and] to name any beneficiaries other than those above named except herself * * *". The government asserted its right to tax under the Revenue Act of 1924, Section 302 (d), supra. The court pointed out that this was an estate tax and not a succession tax, and that Congress could not impose a death tax upon property absolutely transferred prior to the death of the decedent. The court concluded that there could be no such tax if the economic benefits passed under the trust deed from the decedent's control beyond recall, and hence, disallowed the tax, since the decedent had irrevocably dissociated herself from the economic benefits of the property in question; this, notwithstanding the fact that the beneficiaries could not have been definitely ascertained until her death.

In conflict with the above cases is Porter v. Commissioner, 2 Cir., 60 F.2d 673, certiorari granted, 287 U.S. 591, 53 S.Ct. 121, 77 L.Ed. 516. Therein petitioner's testator in 1918 and 1919 conveyed property in trust, and on November 27, 1926 in order to provide for after-born beneficiaries under the trust of 1918 made certain alterations without superseding that trust. The testator reserved power to alter or modify the indenture and any or all of the trusts in any manner, but expressly excepted any change in favor of himself or his estate. The testator died November 30, 1926 and the government included in his gross estate the corpus of all the trusts under Section 302(d) of the Revenue Act of 1926 (similar to Section 302(d), Revenue Act of 1924, supra). Petitioner argued that since the testator had expressly excluded himself as a beneficiary there was nothing on which to levy an excise. The court rejected this contention and concluded that the termination of the control over the final disposition of the estate upon the testator's death constitutes the subject matter of the tax. The court also held that the application of the statute to these transfers did not exceed constitutional limitations because the testator was on notice of this statute prior to his death and could have abandoned his right to change the beneficiaries and avoid the tax.

The Supreme Court affirmed the above decision, Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 453, 77 L.Ed. 880, and stated, "The net estate upon the transfer of which the tax is imposed is not limited to property that passes from decedent at death. * * * Here the donor retained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable. The transfers under consideration are undoubtedly covered by subdivision (d)."

In answer to the contention that this construction of section 302(d) is repugnant to the due process clause of the Fifth Amendment the Court said: "But the reservation here may not be ignored for, while subject to the specified limitation, it made the settlor dominant in respect of other dispositions of both corpus and income. His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the calculation to ascertain the amount of what in section 301 [26 U.S.C.A. Int.Rev. Acts, page 225] is called the net estate. Thus was reached what it reasonably might

deem a substitute for testamentary disposition. United States v. Wells, 283 U.S. 102, 116, 51 S.Ct. 446, 75 L.Ed. 867. There is no doubt as to the power of Congress so to do." 288 U.S. 436, 444, 53 S.Ct. 451, 454, 77 L.Ed. 880.

The holding of the above case has since been followed by Holderness v. Commissioner, 4 Cir., 86 F.2d 137; Commissioner v. Chase National Bank, 2 Cir., 82 F.2d 157, certiorari denied 299 U.S. 552, 55 S.Ct. 15, 81 L.Ed. 407; Witherbee v. Commissioner, 2 Cir., 70 F.2d 696, and Cook v. Commissioner, 3 Cir., 66 F.2d 995.

The plaintiff, however, argues that these cases mistakenly assume that Porter v. Commissioner held that the statute in question could be applied retroactively without constitutional objections. The cases of Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80; Mackay v. Commissioner, 2 Cir., 94 F.2d 558, and Commissioner v. Flanders, 2 Cir., 111 F.2d 117, are offered to demonstrate that whatever doubt formerly existed in the interpretation of Porter v. Commissioner has been clarified, and that it is now definitely established that the statute cannot be applied retroactively.

Each of these cases holds that such an application of the statute would offend the Fifth Amendment to the Constitution. The facts in these cases, however, are distinguishable. In Helvering v. Helmholz and White v. Poor, supra, there was no reserved power to alter, amend, or revoke but only a power to terminate. Hence, the Court held that the transfers were complete at the time of the creation of the trusts, and that the statute could not be applied retroactively. In addition, the Court indicated that the statute was inapplicable because of the absence of the reserved powers. In Mackay v. Commissioner and Commissioner v. Flanders, supra, such a reservation was expressed in the trust deed, but it was to be exercised by the grantor in conjunction with persons holding adverse interests, a doctrine recognized in the case of Porter v. Commissioner, 288 U.S. 436, 442, 53 S.Ct. 451, 77 L.Ed. 880. In such a case, the settlor has in effect put the property beyond his recall.

■ Constitutional objections cannot be made unless the settlor has irrevocably parted with his property, and all dominion over it prior to the effective date of the statute. No case has been found in which a constitutional objection was sustained where the settlor had reserved to himself the power to alter, amend or revoke.

Brady v. Ham has been overruled. It is clear that the theory of taxation expressed by the court there was different from that of the Court in Porter v. Commissioner. In the former case the court was of the opinion that if the settlor had parted with the economic benefits of the property, even though the ultimate beneficiaries thereof were indeterminate until his death, there could be no retroactive application of the statute. The latter case, however, held that the subject matter of the tax was not limited to property passing at death, but included the termination of control over the final disposition of that property— that was the "source of valuable assurance passing from the dead to the living". This theory is similarly opposed to the theory expressed in the case of Cover v. Burnet, 60 App.D.C. 303, 53 F.2d 915, 916. See excerpt supra.

■ Under the holding of the Court in Porter v. Commissioner it is unnecessary to discuss constitutional objections to retroactive legislation. In fact, there is no retroactive application of the statute, because the "valuable assurance passing from the dead to the living" is not crystallized until death. Herein, that occurred subsequent to the effective date of the statute.

With reference to the issue arising out of the inclusion of the decedent's interest in the value of his grandfather's estate as determined by the Supreme Court of New York on May 31, 1927 in the case of Gould v. Gould, it appears that the plaintiff as executor has collected these annual payments and has placed them in the general funds of the decedent's estate.

The government contends that this money is includible in the gross estate under either of the following subsections of the Revenue Act of 1926:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \*

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will

46

* * *." 26 U.S.C.A. Int.Rev. Acts, pages 227, 230.

The plaintiff contends that Jay Gould II had only a life interest in the proceeds of the New York judgment, and that after his death the funds belonged to another person as if by remainder, namely, his executor. The cases of Chemical Bank & Trust Co. v. Com'r, 37 B.T.A. 535, and Dimock v. Corwin, D.C., 19 F.Supp. 56, are offered as relevant.

In the first of these cases the decedent in his lifetime purchased an annuity for a lump sum payable to him for life and upon his death to his wife for life if she survived him. She did survive him and the government sought to include in the decedent's estate the value at the date of the decedent's death of the annuities that were payable to his wife. It was held that this value was improperly included because the wife had the absolute right if she survived to receive the annuities which vested at the time the contracts were made. Hence, nothing passed from the dead to the living.

In the latter case the decedent received a retirement benefit fund for life, and under a death benefit plan of his employer he could designate at his option a beneficiary who would receive certain payments for one year following his death. He designated his wife. It was held that the commuted value at the date of his death of the payments his wife would receive was improperly included in his gross estate. This case likewise held that nothing passed from the dead to the living, since the right to make this designation was not attachable or assignable by him during his life. It was no part of his estate.

The plaintiff mistakenly assumes that the New York judgment providing that "Jay Gould * * * and [his] respective executors and administrators" should receive annual payments so long as the payors lived, creates a life estate in Jay Gould II with a remainder interest in some other person. The limitation over still confines the proceeds to Jay Gould II, and is wholly dissimilar to a limitation over in favor of some third person. We conclude that it constituted part of his estate under Section 302(a), supra, and that it is unnecessary to consider the application of Section 302(f), supra.

Accordingly, the claim for refund of money paid as taxes on the inclusion of the property involved herein is denied.