**TERHUNE et al. v. WELCH, Collector of Internal Revenue.**

No. 7203.

District Court, D. Massachusetts.

June 19, 1941.

Frank H. Harding, of Carpenter, Nay, Caiger & Harding, of Boston, Mass., for plaintiff.

Julian G. Gibbs, Sp. Asst. to the Atty. Gen. (Edmund J. Brandon, U. S. Atty., George F. Garrity and C. Keefe Hurley, Asst. U. S. Attys., all of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to the Atty. Gen., on the brief), for defendant.

SWEENEY, District Judge.

This is an action to recover estate taxes paid in protest of the legality of their assessment and collection. All conditions precedent to the right to maintain this action have been satisfied. The only question in the case is whether the assets of the trust set up by the decedent on May 6, 1929, were properly includable as part of his estate on the date of his death on February 23, 1936.

## Findings of Fact.

A stipulation of facts has been filed by the parties, and I adopt it as findings of fact. From additional evidence submitted at the trial, additional findings are made as will appear herein. Briefly, from the stipulation and from the evidence, I find that, at the time that the trust under consideration was formed, the decedent was seventy-nine years of age. He was in excellent health, and had been over a period of a great many years. He was an active, wiry individual, looking after his own financial affairs which consisted mainly of first mortgages. In addition, for a period of about ten years he had been the president and dominant figure conducting a large Masonic social club house in Boston. He dressed fastidiously, and his looks and activities were those of a younger man. Contemplating remarriage, which took place on June 10, 1929, he created a trust on May 6, 1929, in a desire to so arrange his affairs that no friction would develop between his children and the contemplated second wife who in age was their junior. The dominant motive in creating this trust was a present arrangement of his affairs in view of his coming marriage. That marriage later terminated in a divorce, and he again remarried in 1931. In creating the trust he transferred the principal portion of his property through a straw-conduit to three trustees. The trustees named were the grantor, his son, and his son-in-law. Under the terms of the trust, the net income was to be paid to the decedent during his life, and, upon his death, to certain of his children and grandchildren.

Under clause 12 of the trust indenture the grantor provided that: "This Trust may be terminated or amended at any time, but only with the written consent of the three Trustees herein named, and of any Trustee appointed by William L. Terhune under clause 14 hereof, or the survivors or survivor of them, and of the then surviving children of the said William L. Terhune."

Clause 14 provided that: "The said William L. Terhune reserves the right at any time as his option after June 10, 1929, to appoint another co-trustee to act with the three herein named, and his appointment in writing signed by him and acknowledged, of such additional Trustee, with the written assent of said named

Trustee annexed thereto accepting said Trust, and agreeing to act thereunder and to be bound by all the terms and conditions thereof, * * * shall thereupon operate as the proper appointment of said Trustee as a co-trustee with the three Trustees herein named * * *."

The decedent's first wife died in March, 1927, and he remarried on June 10, 1929, later divorcing the second wife on December 9, 1931. When his estate tax return was filed it reported a transfer, to the trust, referred to above, of property at an agreed valuation of $394,506.27, but this property was not included in the estate tax return.

On September 18, 1937, the Commissioner determined an estate tax deficiency in the amount of $56,542.53, based on his determination that the assets of the trust were properly includable in the return. Later the tax was paid under protest, and this action was brought to recover the allegedly improper assessment.

The Government proceeds on two theories: (1) That Section 302(d) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev. Acts, page 228, requires the inclusion of the trust property in the estate tax return, because the creator reserved the power to revoke or modify the trust even though it was to be exercised jointly with the other trustees and the beneficiaries; and (2) that the transfer of the property to the trust was testamentary in character, and therefore made in contemplation of death, and is includable in the estate tax return under Section 302(c) of the Revenue Act of 1926.

### Discussion.

(a) Section 302(d) of the Revenue Act of 1926

This section reads as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

In its contention that this section of the Revenue Act of 1926 requires inclusion of the trust property in the estate tax return, the Government relies principally on Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62. That case held that this section of the 1926 Act applies to a transfer which was complete when made but subject to be altered or revoked by the transferor with the consent of another person who was himself a beneficiary of the transfer.

The plaintiffs contend that this case is not governed by the decision in the City Bank case, supra, but is governed by Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80; and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. They attempt to distinguish these cases from the City Bank case by pointing to the fact that in the City Bank case the grantor retained the right to amend or revoke in himself as grantor, whereas in the opposing cases the right was not retained by the grantor as an individual, but was acquired by the individual as a trustee. In line with this distinction they argue that since this grantor completely divested himself of the property without retaining any right of revocation or amendment that it was not such a transfer as was intended to be within the purview of this section, and that the acquisition of a right to amend or revoke by the trustees, even though they might include within their number the grantor, is not sufficient to bring the trust property within the estate tax return under the 1926 Act. See Nicholson v. United States, D.C., 25 F.Supp. 424, 426. In that case, from which I understand the Government has taken no appeal, the decision was adverse to the Government. The court stated in its opinion that: "Power to revoke the trust is given not to the donors but to the trustees. The fact that the donor himself is one of the trustees does not alter the situation", citing Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, and other cases.

In the Becker case, supra, the court stated at page 50 of 296 U.S., page 79 of 56 S.Ct., 80 L.Ed. 35: "By the declaration of trust * * * legal title, possession, and control of the trust estate passed irrevocably from the grantor as an in-

dividual to himself as trustee. The effect is no different than if the trustee had been another person."

In reply the Government contends that the effect of the cases cited in the Nicholson case was overruled by the City Bank case, but such a contention is not sound when it is noted that the Becker case and the City Bank case were both decided the same day. It also contends that the effect of the cases cited in the Nicholson decision was overruled by Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. This is not a convincing argument. The Hallock decision in effect overruled the St. Louis Union cases insofar as they had transgressed the doctrine laid down by the court in Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, but did nothing to interfere with or change its utterances in the City Bank case, or in the Becker case so far as that case decided that a grantor could irrevocably transfer property from himself as an individual to himself as a trustee, and that such a transfer was no different than if the trustee were another person.

From a review of all these cases, it seems to be a fair conclusion that, the tax being levelled at a transfer inter vivos and being measured by the value of the transferred property at the time when death brings it into enjoyment, Section 302(d) was designed to cover incompleted or limited transfers. Where, however, complete title has passed out of the decedent with no limitation upon the title which he gives, Section 302(d) is not applicable. The retention by the grantor of a power to amend or revoke seems to be the test under the 1926 Act. Where no such power is retained the property should not be included within the decedent's estate tax return. See Helvering v. Helmholz, supra; White v. Poor, supra.

Witherbee v. Commissioner, 2 Cir., 70 F.2d 696; Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Millard v. Maloney, D.C., 36 F.Supp. 41; Dort v. Helvering, 63 App.D.C. 98, 69 F.2d 836; Commissioner v. Old National Bank in Evansville, 7 Cir., 83 F.2d 1007; Boston Safe Deposit and Trust Co. v. Commissioner, 34 B.T.A. 911, all cited by the Government in support of its contention, are clearly distinguishable in that in each of these cases the grantor reserved some right to amend or revoke.

In the Revenue Act of 1936 this section was amended, 26 U.S.C.A. Int.Rev. Acts page 229, by adding the words "in whatever capacity exercisable" referring to the power to change, and by the addition of the words "without regard to when or from what source the decedent acquired such power". This amendment is persuasive that Congress recognized that prior thereto transfers, such as involved in this case, were not covered by the Act of 1926, and recognizing the Helmholz and Poor decisions as decisive of that question, amended the statute so as to include future cases of this type. There was no retroactive effect to the amendment of 1936, nor could there be. See White v. Poor, supra.

I am satisfied that the trust property was not a part of the estate of the decedent at the time of his death so as to make it taxable under Section 302(d) of the Revenue Act of 1926.

(b) Section 302(c) of the Revenue Act of 1926

This section reads as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * *."

There is little basis for the Government's contention that this trust was created in contemplation of death or intended to take effect in possession or enjoyment at the death of the decedent. The evidence is to the contrary. The decedent, in excellent health, even though at an advanced age, was about to be remarried. This is not an event that is usually associated with thoughts of death. Nor do I find any merit in the Government's argument that the effect of such a marriage to a woman forty years his junior was a matter which gave the decedent concern. Much argument might be fashioned the other way, and could be supported by the facts of his later divorce and remarriage.

While, by the terms of the trust indenture, the decedent made disposition of his property to his children and grandchildren, who would be the natural objects of his bounty, I see nothing in this to support the

contention that his dominant motive was a testamentary disposition. It is equally consistent with, and merely incidental to, the dominant motive which I have found, namely, that in creating the trust he was actuated by a desire to eliminate friction and produce harmony between his children and his second wife. Cf. Lippincott v. Commissioner, 3 Cir., 72 F.2d 788.

### Conclusion of Law.

From the foregoing I therefore conclude and rule that Section 302(d) of the Revenue Act of 1926 does not require inclusion in the gross estate of the decedent of the property in the trust established May 6, 1929.

I also conclude and rule that Section 302(c) of the Revenue Act of 1926 does not require inclusion in the gross estate of the decedent of the property in the trust established May 6, 1929.

Judgment is to be entered for the plaintiffs with interest.