**GOLDSTONE et al. v. UNITED STATES.**

District Court, S. D. New York.

July 17, 1943.

Bondy & Schloss, of New York City, for plaintiffs.

Mathias F. Correa, U. S. Atty., of New York City (Arnold C. Stream, Asst. U. S. Atty., of New York City, of counsel), for defendant.

BRENNAN, District Judge.

The executors of the estate of Morris L. Goldstone bring this action under the pro-

visions of the Internal Revenue Code to recover $5,376.11, being a portion of the federal estate tax assessed against and paid by the estate of Morris L. Goldstone, deceased.

The facts are not in dispute and are contained in a stipulation duly executed and filed with the Clerk.

On June 29, 1933, upon the application of decedent, the Equitable Life Assurance Society of the United States issued two contracts in the form of life insurance policies, one in the amount of $18,928, payable upon the death of Morris L. Goldstone, referred to therein as the "Insured", to the Insured's wife, Beatrice L. Goldstone, if living, or in the event of her prior death to the two daughters of the Insured.

The second policy may be termed an "annuity contract" and provides for the semi-annual payment of $386.51, to the decedent, who is designated as the "Annuitant", during his lifetime, and upon his death for the payment to his wife, Beatrice L. Goldstone, if living, the sum of $6,071.46; or, in the event of her prior death, to the two daughters of the Annuitant.

Both policies were re-written without substantial change within two months from the date of their original issue.

The consideration of the first policy was the single premium payment by the decedent of $14,357.08. The consideration for the issuance of the second policy was a single premium payment by the decedent of $12,142.92.

In the first policy Beatrice L. Goldstone is designated as the "Owner" and in the second policy she is designated as the "Purchaser".

The policies provide in substance that the rights of the Owner and Purchaser should pass to Morris L. Goldstone upon the death of Beatrice L. Goldstone, and should the beneficiaries, his wife and two daughters, predecease him, then the benefits accruing upon his death should be paid to his estate.

In both policies the rights to receive dividends, surrender the policies, change beneficiaries, sign and pledge the contracts, were vested in the "Owner" or "Purchaser", during her lifetime and upon her death were passed to the "Insured" or "Annuitant".

The policies were issued at the same time. Morris L. Goldstone was then about sixty-three years of age and no physical examination of the decedent preliminary to the issuance of the contracts was required.

The controversy herein arises by reason of the inclusion of the proceeds of both policies in the taxable estate of the decedent and the levying of an estate tax thereon, which was paid under protest. Application for a refund was made and the application was denied.

Plaintiffs contend that the inclusion of the proceeds of the two policies in the gross estate of the decedent was error, as each contract at its inception was complete in itself; the decedent held no property rights therein during his lifetime, and the beneficiary received no greater right or interest in the contracts by reason of his death.

The government contends that the issuance of the policy was an inter vivos transfer by the decedent to the beneficiary, "* * * intended to take effect in possession or enjoyment at or after his death", and therefore taxable under the provisions of Section 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A.Int.Rev.Code, § 811(c).

Both parties agree that the contracts created no insurance risk and that such contracts were not "insurance" within the meaning of the Internal Revenue Code, so that the provisions of Section 302(g) referred to in the briefs may be discarded as inapplicable. Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996.

There remains only to be decided the question as to whether the tax was legally levied under the provision of 302(c) of the Internal Revenue Act.

Plaintiffs urge that the total ownership and unrestricted beneficial interest in these contracts was the property of the wife, Beatrice L. Goldstone, and was not and never was the property of the decedent; and is, therefore, not taxable, and they cite a number of cases where the question of taxation turned upon a finding of at least one of the indicia of ownership in the decedent. They seek to distinguish the case of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, upon the ground that in the instant case there could be no "right of reverter" in the contracts or their proceeds, because there never was an ownership therein by the decedent, and, therefore, any title that the decedent might have received by reason

of the prior death of his wife was a new title, and in no sense is the right of reverter applicable in this case.

The plaintiffs have placed too much importance upon the use of the word "reverter". Even if we assume it to be true that the decedent never had legal ownership of the contracts, none the less, he used the contracts as a media through which he transferred a part of his estate to certain beneficiaries, the full enjoyment of which was delayed until his death. Technically, the decedent may not have had a "right of reversion" in the insurance contracts, because of the absence of prior ownership therein, but he did own that part of his estate which purchased the insurance contracts, and if any interest therein could come to him by reason of any contingency, then it comes squarely within the doctrine of Helvering v. Hallock, supra.

The purpose and breadth of the applicable statute is concisely stated in Helvering v. Hallock, 309 U.S. 106, at page 114, 60 S.Ct. 444, at page 449, 84 L.Ed. 604, 125 A.L.R. 1368: "They relied on the governing principle of § 302(c) that Congress meant to include in the gross estate inter vivos gifts 'which may be resorted to, as a substitute for a will, in making dispositions of property operative at death.'"

Here were inter vivos gifts made in such a manner as to act as exact substitutes for a will, for, by the investment in or purchase of the insurance contracts, the donor provided for the transfer of about $25,000 of his estate to the natural objects of his bounty.

The defendant argues that the gift was of the policies, not of the purchase price or the amount payable at death, but if we look beyond the "conveyancer's device"—and we are cautioned to look to substance, not form, Helvering v. Hallock, supra—we find the policies were the means used to accomplish the transfer of a part of the estate of the decedent.

"Obviously, the word 'transfer' in the statute, or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another." Chase Nat. Bank v. United States, 278 U.S. 327, at page 337, 49 S.Ct. 126, at page 128, 73 L.Ed. 405, 63 A.L.R. 388.

Was the transfer intended to take effect in possession or enjoyment at or after death? The "owner" or "purchaser" may have had possession and the legal ownership of the policies after their issuance, but she did not have the possession or enjoyment of the fund transferred by the inter vivos act. She could have obtained the possession and enjoyment of a part thereof by a surrender of the contracts during the lifetime of the decedent. But to argue that the purpose of the investment was to provide a present fund for the beneficiary is to ignore the basic purpose of the investor. It was the death of the insured which completed the shifting of economic benefit of the property transferred.

"The death of Mrs. Clise caused a shifting, or the completion of a shifting of an economic benefit of property, which is the subject of a death tax. Chase Nat. Bank v. United States, 278 U.S. 327, 338, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388. We quote from Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996; 'It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.'" Commissioner of Internal Revenue v. Clise, 9 Cir., 122 F.2d 998 at page 1003.

The death of the "Insured" and "Annuitant" "* * * became the 'generating source' of important and definite accessions to the property rights" of the beneficiary. Tyler v. United States, 281 U.S. 497 at page 504, 50 S.Ct. 356, at page 359, 74 L.Ed. 991, 69 A.L.R. 758.

The plaintiffs confuse the requirement under Section 302(g) of an indicia of ownership as a basis for taxation, with the elements necessary to find a taxable event under section 302(c). "Section 302(c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment." Helvering v. Hallock, 309 U.S. 106, at page 110, 111, 60 S.Ct. 444, at page 447, 84 L.Ed. 604, 125 A.L.R. 1368.

The above case is authority for the taxing of the proceeds of the insurance policies under the provisions of Section 302 (c) upon the theory that the transfer was akin to a testamentary disposition, and that by reason of the language of the contracts, the decedent held in suspense the ultimate disposition of the property until the moment of his death.

See, also: Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996; Chase Nat. Bank v. United States, 2 Cir., 116 F.2d 625; Commissioner of Internal Revenue v. Washer, 6 Cir., 127 F.2d 446; Commissioner of Internal Revenue v. Flanders, 2 Cir., 111 F.2d 117; Bailey v. United States, C.C., 31 F.Supp. 778, 90 Ct.Cl. 644; Mearkle's Estate et al. v. Commissioner of Internal Revenue, 3 Cir., 129 F.2d 386.

The complaint herein is dismissed.