CHEMICAL BANK & TRUST COMPANY AND JOHN G. SAXE, AS EXECUTORS OF THE ESTATE OF FRANK J. SAXE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79276. Promulgated March 29, 1938.

*Harry W. Forbes, Esq.,* for the petitioners.
*J. R. Johnston, Esq.,* for the respondent.

OPINION.

BLACK: We shall take up and dispose of the issues in the order that we have stated them. Issue (1) relates to two annuity contracts which decedent had purchased in his lifetime from the Mutual Life Insurance Co. of New York for lump sum payments. These annuities were payable to decedent as long as he should live, and at his death if his wife survived him the annuities were payable to her as long as she should live. Decedent's wife did survive him, and respondent included in decedent's gross estate the amount which he determined to be the value, at the date of decedent's death, of the annuities which were payable to her. The annuity contracts when purchased were irrevocable. The decedent had no right to change the beneficiary and no control or interest in the contracts other than his right to receive the annuities during his life. This right ceased at his death. The interest which his wife, Mary L. Saxe, had was a right to receive the annuities after his death if she survived him. That right she obtained absolutely at the time the contracts were made. It was not a right over which the testator had any power of revocation or control during his lifetime, and at his death nothing passed from the dead to the living. *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784.

These annuity contracts are different from the ones which we had before us in *Guaranty Trust Co. of New York, Executor*, 16 B. T. A.

314. In that case the annuity contracts were revocable at the pleasure of Mrs. Roxy M. Smith, who purchased them. In our opinion in that case we pointed out this fact in the following language:

\* \* \* The contracts had at all times a cash surrender or commuted value and the decedent could have canceled them at any time and received the amount thereof, and she could have changed the beneficiary and made it payable to whom she pleased.

In other words, the annuity contracts were essentially equivalent to revocable trusts.

The situation is different in the instant case. Here the annuity contracts had no cash surrender value and decedent had no power to revoke them. They were in all essential respects equivalent to irrevocable trusts, and the Supreme Court decisions relating to conveyances to irrevocable trusts which we have cited above are applicable.

We sustain petitioners' assignment of error as to issue (1).

*Issue* (2).—Respecting this issue, the parties are not so far apart. The petitioners returned in the estate tax return $14,815.40 for this item, and respondent increased this amount to $20,000. The subject of valuation is the $20,000 death refund provided for in the investment annuity contract of July 1, 1929.

Petitioners' contention regarding this issue in substance is as follows: That the contract in question was a combined annuity and life insurance contract and that the $20,000 death refund which was payable at decedent's death was an insurance payment and is governed by the provisions of section 302 (g) of the Revenue Act of 1926, which reads as follows:

Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

\*         \*         \*         \*         \*         \*         \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by decedent upon his own life.

Petitioners contend that the right of the executors to receive the $20,000 death refund was postponed until the death of decedent's widow, Mary L. Saxe, and therefore the right of the executors to receive this sum had only a present value of $14,815.40 at the date of decedent's death, and that it is this latter amount and not $20,000 which should be included as a part of decedent's gross estate.

It is petitioners' further contention that the right of Mary L. Saxe to receive interest at the rate of 3 per centum per annum on this $20,000 death refund during the remainder of her life had a present value at the date of the death of decedent of $5,185, based upon the life expectancy of Mary L. Saxe, and that this sum represents the

commuted value of insurance payable under the terms of the contract and therefore is exempt as being a part of the $40,000 of life insurance, payable to beneficiaries other than the decedent's estate, which is exempted under section 302 (g) of the Revenue Act of 1926.

If the contract in question were an insurance policy, the contention of petitioners would seem to be correct, but it was not an insurance policy. It was an annuity contract, with death refund benefits. The contract itself was designated on its face as an "Investment Annuity." Nowhere in the contract is it designated as an insurance policy. The contract in the instant case seems to be in all essential respects the same as the contract which we recently had before us in *Old Colony Trust Co., et al., Executors*, 37 B. T. A. 435. In that case we held that the contract under which the payments were made was not a policy of life insurance and was not exempt from estate tax within the provisions of section 302 (g) of the Revenue Act of 1926. We so hold in the instant case.

It should be pointed out that the annuity contract which we are now considering under issue (2) is different from the contracts which we considered under issue (1). The contracts there considered were irrevocable, whereas the contract which we are now considering was revocable and at any time prior to his death the decedent could have changed the beneficiary, hence the contract was in the same category as a revocable trust. This much the petitioners concede, but they contend that the part which was payable to decedent's wife, Mary L. Saxe, represented insurance benefits and hence is exempt under the $40,000 life insurance exemption provision of section 302 (g) of the Revenue Act of 1926.

For reasons already stated, we overrule this contention and sustain the Commissioner in including in decedent's gross estate the full value of the death refund payment, which was $20,000.

*Issue (3).*—This issue involves the inclusion by respondent in decedent's gross estate of the value of property conveyed by him in trust on August 10, 1928, more than five years prior to his death. In this trust decedent reserved for himself the income for life, with remainder over of the corpus to his wife and other relatives. The trust was irrevocable. In his deficiency notice respondent included the value of this trust property on the ground that decedent died subsequent to the passage of the Revenue Act of 1932, effective June 6, 1932, and therefore the property is includable as part of the decedent's gross estate pursuant to the provisions of section 803 (a) of that act, and articles 15 and 18 of Estate Tax Regulations 80, promulgated thereunder.

Respondent at the hearing amended his answer and affirmatively alleged that decedent executed the deed of trust in contemplation of

death. However respondent offered no evidence in support of his affirmative allegations, and relies in support of this contention upon other evidence in the record. This of course he has a right to do, but we do not think the facts sustain him in this contention.

Petitioners at the hearing offered the testimony of John G. Saxe, one of the executors of the estate, who had known the decedent for many years. Saxe testified that at the time decedent executed the deed of trust in question he was 74 years of age and in good health. He said that decedent came of a long lived family, his mother having lived beyond the age of 90 years. The witness testified that several years before her death decedent's mother lost the use of her mental faculties and never regained them, though remaining in good physical health until a short time before her death. He said that decedent told him that the reason he executed the deed of trust on August 10, 1928, was to place a part of his property in the hands of a competent trustee so that if, like his mother, he should lose his mental faculties in his declining years there would be somebody competent to look after his affairs and care for him and his wife during the period of his disability. No testimony was offered to contradict the testimony of this witness and we therefore accept as true his explanation of the dominant reason for decedent's execution of the trust deed in question. These reasons we think were associated with life rather than death. The purpose of the transfer was not testamentary. Cf. *United States* v. *Wells*, 283 U. S. 102.

Decedent had made a testamentary disposition of his property by a will dated February 19, 1924, which was more than 4 years prior to the execution of the trust deed in question. It is true that decedent executed a codicil to his will 3 days after the execution of the deed of trust, but this codicil made no reference whatever to the property conveyed in the deed of trust. It was simply a correction of the spelling of a name contained in his will of February 19, 1924, and the addition of a clause that the provisions for his wife contained in his will were in lieu of dower. This codicil, we think, is not of any controlling importance to any issue which we have here to decide.

We hold on the evidence that the deed of trust dated August 10, 1928, was not executed in contemplation of death. Respondent contends however that, even if we hold against him on the issue of contemplation of death, nevertheless the value of the trust corpus is includable as a part of decedent's gross estate because he reserved to himself for life the income from the property and died after the effective date of the provisions of section 803 (a) of the Revenue Act of 1932. It is true that decedent died December 15, 1933, which was after the effective date of said section, but we have held that this section has no retroactive application to irrevocable transfers which

were made prior to its enactment and prior to the enactment of the joint resolution of March 3, 1931, amending section 302 (c) of the Revenue Act of 1926. See *Mildred Kienbusch et al., Executors*, 34 B. T. A. 1248; *Dwight Whiting et al., Trustees*, 35 B. T. A. 100; *Pearl W. Dahl, Executrix*, 35 B. T. A. 282; *E. Pennington Pearson, Executor*, 36 B. T. A. 5; *Welch v. Hassett*, 90 Fed. (2d) 833, certiorari granted, 302 U. S. 674.

The Supreme Court recently handed down decisions in *Hassett v. Welch*, 303 U. S. 303, and *Helvering v. Marshall*, 303 U. S. 303, in which it held that the joint resolution of March 3, 1931, and section 803 (a) of the 1932 Act, amending section 302 (c) of the 1926 Act, apply only to transfers with reservation of life income made after the dates of their respective adoption. Section 302 (h) of the 1926 Act does not authorize retroactive application of section 302 (c) of that act as amended.

The trust involved here was executed August 10, 1928, and, as we have stated, was irrevocable and made complete disposition of the corpus and was not executed in contemplation of death. Hence we hold, following the decisions of the Supreme Court just above cited, that respondent was in error in including as a part of decedent's gross estate the value of the property conveyed in the trust instrument of August 10, 1928.

On this issue we sustain petitioners.

*Decision will be entered under Rule 50.*