## COMMISSIONER OF INTERNAL REVENUE v. CLISE et al.

### No. 9652.

Circuit Court of Appeals, Ninth Circuit.

Oct. 4, 1941.

Rehearing Denied Nov. 13, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Joseph M. Jones, and Alexander Tucker, Sp. Assts. to the Atty. Gen., for petitioner.

Warren H. Lewis, K. I. Ghormley, and Wendell W. Black, all of Seattle, Wash., for respondents.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Anna Herr Clise died February 11, 1936, when nearly seventy years of age. In due time an Estate Tax Return on behalf of the decedent's estate was filed with the Collector of Internal Revenue for the District of Washington. Though Mrs. Clise was a woman of considerable wealth, the Estate Tax Return filed in behalf of her estate disclosed no tax liability. The Commissioner of Internal Revenue, however, after consideration of the matters involved, assessed a deficiency in the estate tax in the sum of $7,257.67. Redetermination of the deficiency was sought in the Board of Tax Appeals upon the ground, set forth in detail in the Amended Petition, that the Commissioner erred in fixing the value of the estate. The Board reversed the Commissioner's determination and decided there was no deficiency in estate tax. 41 B.T.A. 820. The Commissioner petitions this court to review that decision.

The following statement of the case is based upon the facts found by the Board.

June 30, 1933, the New York Life Insurance Company issued Anna H. Clise, then 67 years of age, a $2,000 single premium, ordinary life insurance policy, on her own life, with her three children as beneficiaries. The premium paid the company was $1,602.50. Concurrently with the issuance of the life insurance policy the same company issued to decedent for a single premium of $517.50, a straight life annuity contract, agreeing to pay her an annuity of $52.86 during the remainder of her life. The sums $1,602.50 and $517.50 total $2,120, of which $120 probably covered "loading" and commissions, etc. The annuity of $52.86 may then be taken as interest on $2,000 at .02643.

On December 28, 1934, the same insurance company issued to Mrs. Clise a life insurance policy in the face amount of $22,000, for a single premium of $18,130.20, the proceeds of which, $22,038.98, were paid to Anna Clise's eleven grandchildren as beneficiaries. On the same December day, the company issued to her an annuity contract similar to that of June 30, 1933, for a single premium of $5,189.80, the annuity being $492, payable $41 monthly.

The insurance company did not require a physical examination for the life insurance policies issued June 30, 1933, and December 28, 1934, the company accepting the annuity contracts in lieu thereof, but the insurance company would not have issued the life insurance policies, due to the risk involved, without issuing the annuity contracts in conjunction therewith. The decedent could have obtained the annuity contracts for the same premium, however, without the contemporaneous issuance of the life policies.

In December, 1934, there were issued to decedent by various life insurance companies, sixteen single premium joint and survivor non-participating annuity contracts, in varying amounts, each payable to the decedent during her lifetime, as the

first annuitant, and to a designated second annuitant upon the death of the first annuitant. These contracts provided that the decedent should not have the right to commute, anticipate, transfer, or assign any right or interest in or under the contract or any payments provided for therein, and gave decedent no rights except to receive the periodic payments. The named successor annuitant in each instance actually survived the decedent.

Although not essential or important to the decision of the question before us, for completeness it should be mentioned that on March 6, 1934, the New York Life Insurance Company issued to decedent for a single premium, a non-participating refund annuity contract. The amount of the annuity was payable to decedent's daughter and two sons, in equal shares, but the decedent reserved the right to change the beneficiaries. On March 14, 1934, the Sun Life Insurance Company of Canada issued a similar policy. The taxpayers conceded before the Board that the value of each of these policies, as of the date of decedent's death, was properly includible in the gross estate and no question as to these amounts is now raised.

The decedent's investments had not at all times been successful; a suit against her husband for an accounting was regarded by her as threatening the safety of her wealth. Upon the advice of her son, she made the purchases of life insurance which deprived her of control over her capital but protected her from such claims as resulted in the suit mentioned.

Other than being handicapped by blindness, the decedent was in good health until September, 1935, when symptoms of disease appeared which progressed until her death from cancer. A firm and active belief in her professed religion led her to state, during her lifetime, that her blindness was nonexistent and that death was merely a manifestation of error, which she would not recognize as a possible fact. In the circumstances, the Board found that "The purchase of the foregoing annuities was not made in contemplation of death."

The parties pose two questions for answer:

I. Whether the proceeds of each of the two life insurance policies, issued June 30, 1933, and December 28, 1934, respectively, were to be regarded as "insurance" for the purposes of estate tax under § 302(g) of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Code, § 811(g), and not includible in the gross estate, or subject to the provisions of § 302(c) of said Act, as amended, and not exempt?

II. Whether the value at decedent's death of the sixteen joint and survivor annuity contracts was required to be included in the decedent's gross estate as transfers "in contemplation of or intended to take effect in possession or enjoyment at or after" the donor's death, or were the rights of the second annuitants simply gifts inter vivos?

The statutes necessary to intelligent consideration of the problems involved are set forth in a marginal note.[1]

---

[1] Revenue Act of 1926, 44 Stat. 9, 70, as amended by the Act of June 6, 1932, 47 Stat. 279:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer or a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

\* \* \* \* \* \*

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount

Respecting the first question, the Commissioner contends, "The combined effect of the simultaneous issuance of the single-premium life insurance policies and annuity contracts was to eliminate the risk inherent in life insurance, thus precluding exclusion of the funds as insurance." No argument is made, but attention is drawn to what is termed an "identical issue" confronting the Supreme Court at the time of filing of the Commissioner's brief here. The respondent concurred in this suggestion. The Supreme Court handed down its opinion in Helvering v. LeGierse, 312 U.S. 531, 61 S.Ct. 646, 649, 85 L.Ed. 996, on March 3, 1941, deciding the question adversely to the taxpayer. There, as here, an "insurance" policy was issued to the decedent, on the decedent's life, contemporaneously with an annuity contract; the insured was of an advanced age and no physical examination was required; the "insurance" policy was of the single premium type, as was the annuity contract; the "insurance" policy would not have been issued without the contemporaneous issuance of an annuity contract. The Supreme Court said:

"We think the fair import of subsection (g) is that the amounts must be received as the result of a transaction which involved an actual 'insurance risk' at the time the transaction was executed. Historically and commonly insurance involves risk-shifting and risk-distributing. * * * That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. [Citations.] Accordingly, it is logical to assume that when Congress used the words 'receivable as insurance' in § 302(g), it contemplated amounts received pursuant to a transaction possessing these features. [Cases cited.]

\* \* \* \* \*

"The two contracts must be considered together. To say they are distinct transactions is to ignore actuality, for it is conceded on all sides and was found as a fact by the Board of Tax Appeals that the 'insurance' policy would not have been issued without the annuity contract. * * *

"Considered together, the contracts wholly fail to spell out any element of insurance risk. * * *"

The Supreme Court then held the proceeds were taxable under § 302(c), "as a transfer to take effect in possession or enjoyment at or after death."

■ Accordingly, so far as the first question is concerned, the decision of the Board of Tax Appeals is reversed. See, also, Keller's Estate v. Commissioner, 312 U.S. 543, 61 S.Ct. 651, 85 L.Ed. 1032, affirming 3 Cir., 113 F.2d 833.

On the second question, the Commissioner argues, "The value at the decedent's death of the joint and survivor annuity contracts should be included in the gross estate of the decedent." He urges "that these simultaneous transactions constituted in the aggregate a substitute for a testamentary disposition, * * *" within the purview of § 302(c).

■ The Federal Estate Tax is levied upon the privilege of transmission of property at death. Saltonstall v. Saltonstall, 276 U.S. 260, 270, 48 S.Ct. 225, 72 L.Ed. 565. It is "death duties," as distinguished from a legacy or succession tax. It does not tax the interest to which the legatees and devisees succeed on death, but the interest which ceased by reason of death; what is imposed is an excise upon the transfer of an estate upon death of the owner. Nichols v. Coolidge, 274 U.S. 531, 537, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Young Men's Christian Ass'n v.

---

receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

Revenue Act of 1934, 48 Stat. 680, 687:

"§ 22. Gross Income.

\* \* \* \* \* \*

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this title [chapter]:

\* \* \* \* \* \*

"(2) Annuities, etc. * * * Amounts received as an annuity under an annuity or endowment contract shall be included

in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title [chapter] or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *" 26 U.S.C.A. Int.Rev. Code, § 22(b) (2).

Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Edwards v. Slocum, 264 U.S. 61, 62, 44 S.Ct. 293, 68 L.Ed. 564; Knowlton v. Moore, 178 U.S. 41, 47, 49, 20 S.Ct. 747, 44 L.Ed. 969. The Supreme Court, in Reinecke v. Northern Trust Co., 278 U.S. 339, 347, 49 S.Ct. 123, 125, 73 L.Ed. 410, 66 A.L.R. 397, said, "In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred." Death is said to be the generating event. Tyler v. United States, 281 U.S. 497, 502, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758.

With these statements of the nature of the tax before us we proceed to an examination of the historical background for, with the exception of Chemical Bank & Trust Co., etc., v. Commissioner, 37 B.T.A. 535, of which more later, no one of the cases cited, or examined by us, is based upon facts identical with those at bar. These decisions, therefore, because not decisive, serve but as guideposts from which we may attempt to reason out the real answer to our own problem.

April 14, 1930, the Supreme Court of the United States decided the case of May v. Heiner, Collector, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244. It was there held that a transfer in trust by a grantor since deceased, under which the income was payable to decedent's husband during his lifetime and after his death to the decedent trustor during her lifetime, with remainder over to her children, was not made in contemplation of death or intended to take effect in possession or enjoyment at or after death, within the legal significance of those words, and that, therefore, the corpus of the trust should not be included in the value of the gross estate of the decedent for purposes of estate tax.

Thereafter, on March 2, 1931, the Supreme Court, by memorandum opinion, decided three cases upon the authority of May v. Heiner, supra: Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, and McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413.

On the day following, March 3, 1931, the Congress amended § 302(c) to avoid the effect of the above decisions. The section then provided that the value of the gross estate of a decedent should be determined by including the value at the time of his death all property, real or personal, etc. (the new matter appears in italics):

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom*; except in case of a bona fide sale for an adequate and full consideration in money or money's worth." 46 Stat. 1516, 26 U.S.C.A. Int.Rev.Acts, page 227.

Government counsel contended, relative to this section, in the case of Hassett v. Welch, 303 U.S. 303, 309, 58 S.Ct. 559, 562, 82 L.Ed. 858, that the tax was meant to be laid on estates of all who died after the adoption of the amendment to subdivision (c). The Court traced the history of the Resolution:

"* * * Section 302(c) of the Act of 1926, like earlier acts, measured the tax by the inclusion in the gross estate of property of which the decedent had made a voluntary transfer in contemplation of, or intended to take effect in possession or enjoyment at or after his death. Notwithstanding the Treasury had ruled that a transfer of assets with a reservation of income for the donor's life came within the definition, this court held otherwise. [May v. Heiner, supra.] Dissatisfied with the decision, the Government sought a reversal of it, but in three judgments, announced on March 2, 1931, the ruling was reaffirmed. [Northern Trust; Morsman; and McCormick cases, supra.] In the opinions in these cases, which led to the preparation and adoption of the Resolution, the court said there was 'no question of the constitutional authority of the Congress to impose prospectively a tax with respect to transfers or trusts of the sort here involved.' There then remained one day of the current session of Congress. The Treasury drafted an amendment of section 302(c) to bring trusts of this type within its sweep, in the form of the Joint Resolution of March 3, 1931, which was sent to Congress on the day of our decisions and was passed, under a suspension of the rules, on the next day, the last of the session."

After some further discussion in the opinion, the Court concluded that the amendment was prospective only, that is, it did not apply to transfers made prior to March 3, 1931, but applied only to those made subsequent to that date.

This brings us to a consideration of Chemical Bank & Trust Co., etc., et al. v. Commissioner, 37 B.T.A. 535 (counsel for respondents and P-H 1941 Federal Tax Service, Par. 23,252 advise that the Circuit Court of Appeals for the Second Circuit dismissed the petition for review without opinion). In that case, the decedent during his lifetime purchased two irrevocable annuity contracts, payable to himself so long as he should live, and upon his death to his wife if she should survive him. Both contracts were purchased prior to March 3, 1931; the decedent died December 15, 1933, and his wife survived him. The Commissioner included in decedent's estate the value of the annuities payable to the wife, as of December 15, 1933, the date of the death of the first annuitant. The Board overruled the Commissioner, saying:

"* * * The decedent had no right to change the beneficiary and no control or interest in the contracts other than his right to receive the annuities during his life. This right ceased at his death. The interest which his wife, Mary L. Saxe, had was a right to receive the annuities after his death if she survived him. That right she obtained absolutely at the time the contracts were made. It was not a right over which the testator had any power of revocation or control during his lifetime and at his death nothing passed from the dead to the living. [Citing the May, Northern Trust, Morsman and McCormick cases, supra.]"

Although Hassett v. Welch, supra, had been decided approximately a month when the Board of Tax Appeals promulgated the above decision, and the writer of the Board's opinion was aware of it (cf. 37 B.T.A. 542), the Board did not treat the question of retroactive operation of the amendment to the Act in its discussion of this phase of the problem before it in the Chemical Trust case, supra.

We cannot approve the Board's reasoning in the Chemical Bank & Trust case; the Board's view of the situation confronting it there does not coincide with ours. Moreover, that case could have been decided upon the authority of Hassett v. Welch, supra.

Unquestionably, Mrs. Clise, the first annuitant, reserved to herself the enjoyment —the economic benefit, of these contracts during her lifetime. This is true, just as surely as though she had created a trust fund with her property—money, and reserved to herself a certain sum annually, to be paid out of income and corpus, with the remainder over. Mrs. Clise reserved to herself the complete enjoyment of her property, during her lifetime, to the extent she desired to enjoy it, relieved of the worry and cares of management, and guaranteed an estate to the objects of her bounty after her death. It is clear, therefore, that Mrs. Clise retained to herself the economic benefits of her property during her lifetime.

It is argued, however, that upon her death nothing passed from the dead to the living, that the making of the annuity contracts constituted completed gifts to the second annuitants as of the dates thereof. But this assertion is to no purpose, for, so long as Mrs. Clise lived, it was impossible for the second annuitants to possess or enjoy the economic benefits of the transfer and until Mrs. Clise's death it was not an absolute certainty that any one of the second annuitants would survive her. The death of the first annuitant, then, was the generating event. Tyler v. United States, supra. The death of Mrs. Clise caused a shifting, or the completion of a shifting of an economic benefit of property, which is the subject of a death tax. Chase Nat. Bank v. United States, 278 U.S. 327, 338, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388. We quote from Klein v. United States, 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996: "It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed."

Again, the annuities must have been based upon the life expectancy of the second annuitants, who were younger than the first annuitant. Reasoning from this, it follows that the decedent had reserved a life estate in the proceeds of the contracts, which would leave the value of the respective contracts taxable to her estate under § 302(c): "* * * of which [decedent] has at any time made a transfer, * * * under which he has retained for

his life * * * the * * * enjoyment of * * * the property, * * *." The word "transfer," said the Supreme Court in Chase Nat. Bank v. United States, 278 U.S. 327, 337, 49 S.Ct. 126, 128, 73 L.Ed. 405, 63 A.L.R. 388, "must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

The latest expression of the Supreme Court on § 302(c) is to be found in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, wherein the Court discusses that particular section of the Revenue Act with relation to the Klein case, supra, and the St. Louis Trust cases, Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S. Ct. 78, 80 L.Ed. 35, judicial landmarks in the field governed by § 302(c). We deem it helpful to quote parts of the Hallock opinion:

"* * * Whether the transfer made by the decedent in his lifetime is 'intended to take effect in possession or enjoyment at or after his death' by reason of that which he retained, is the crux of the problem. * * * Section 302(c) deals with property not technically passing at death but with interests theretofore created. The taxable event is a transfer inter vivos. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment." [pages 110, 111 of 309 U.S., page 447 of 60 S.Ct., 84 L.Ed. 604, 125 A.L.R. 1368]

"* * * It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise. By bringing into the gross estate at his death that which the settlor gave contingently upon it, this Court fastened on the vital factor." [page 112 of 309 U. S., page 448 of 60 S.Ct., 84 L.Ed. 604, 125 A.L.R. 1368]

"* * * It therefore becomes important to inquire whether the technical forms in which interests contingent upon death are cast should control our decision. If so, it becomes necessary to determine whether the differing terms of conveyance now in issue approximate more closely those used in the Klein case and are therefore governed by it, or have a greater verbal resemblance to those that saved the tax in the St. Louis Trust cases. Such an essay in linguistic refinement would still further embarrass existing intricacies. It might demonstrate verbal ingenuity, but it could hardly strengthen the rational foundations of law. * * *" [pages 116, 117 of 309 U.S., page 450 of 60 S.Ct., 84 L.Ed. 604, 125 A.L.R. 1368]

"Our real problem, therefore, is to determine whether we are to adhere to a harmonizing principle in the construction of § 302(c), or whether we are to multiply gossamer distinctions between the present cases, and the three earlier ones. Freed from the distinctions introduced by the St. Louis Trust cases, the Klein case furnishes such a harmonizing principle." [page 118 of 309 U.S., page 451 of 60 S.Ct., 84 L.Ed. 604, 125 A.L.R. 1368] See, also, Commissioner v. Wilder's Estate, 5 Cir., 118 F.2d 281.

It is not coining a phrase to say that taxation is a practical matter, dealing with practical problems. The practical effect of the annuity contracts was to reserve to Mrs. Clise the enjoyment of the property transferred and to postpone the fruition of the economic benefits thereof to the second annuitants until her death. In the light of the Hallock case the transfers were "too much akin to testamentary dispositions not to be subjected to the same excise." As we read the statute and understand the law of the Klein and Hallock cases, the Commissioner's position here is well taken.

■ Because there is a lack of agreement between the taxpayers and the Commissioner as to the precise value of at least some of the annuity contracts, as of the date of the decedent's death, it becomes necessary to remand the case to the Board of Tax Appeals for a finding of true value.

Reversed and remanded.