MORRISTOWN TRUST CO. v. MANNING,
U. S. Internal Revenue Collector.

Civ. 3991.

United States District Court
D. New Jersey.

Dec. 19, 1951.

Schenck, Price, Smith & King, Morristown, N. J., Harold A. Price, Morristown, N. J., Benjamin Harrow, New York City, of counsel, for plaintiff.

Grover C. Richman, Jr., U. S. Atty., by Roger M. Yancey, Asst. U. S. Atty., Newark, N. J., Andrew D. Sharpe, A. Barr Comstock, Special Assts. to the Atty. Gen., of counsel, for defendant.

FORMAN, Chief Judge.

This is an action to recover the sum of $9,379.81 plus statutory interest thereon, representing an alleged overpayment in federal estate taxes assessed against and collected from plaintiff, as executor of the estate of a decedent dying on January 30, 1936. The parties hereto have filed a written stipulation of facts from which the court makes the following

### Findings of Fact

1. The plaintiff, Morristown Trust Co., is the executor of the estate of Henry W. Williams, deceased, who died on January 30, 1936. (Stip., par. 1)

2. The plaintiff, as such executor, duly filed a federal estate tax return on December 29, 1936 (Stip., par. 2) and on April 19, 1937 paid the tax as indicated therein in the amount of $24,583.07 (Stip., par. 3).

3. The Commissioner of Internal Revenue thereafter tentatively audited and reviewed the said estate tax return and on September 13, 1939 tentatively determined a deficiency tax of $17,016 thereon, which sum together with interest of $2,806.-47, a total of $19,822.17 was paid by plaintiff to the defendant Collector of Internal Revenue on May 1, 1940 (Stip., pars. 4 and 5).

4. In the said estate tax return the plaintiff failed to deduct and the Commissioner in his deficiency determination of September 13, 1939, made no allowance for deductions from the taxable assets of the said estate for the amount of executor's commission, attorneys' fees and administration expenses and for an 80% credit allowable on account of the New Jersey transfer inheritance taxes, because the amounts thereof were not determined or determinable at that time (Stip., par. 6).

5. The amount of said executor's commission, attorneys' fees and administrative expenses, in the total sum of $54,715.99, was thereafter fixed and determined in the probate court of New Jersey. The plaintiff thereafter submitted to the said Commissioner of Internal Revenue proof of the amount thereof; that the same had been duly fixed and determined; that the New Jersey State Transfer Inheritance Taxes had been paid by the estate, and the plaintiff on June 12, 1942 filed a claim for refund of federal estate taxes allegedly overpaid (Stip., par. 7).

6. The Commissioner, by letter dated February 17, 1944, allowed the deductions and credit claimed by the executor (Stip., par. 8).

7. The Commissioner of Internal Revenue in said letter of February 17, 1944, however, stated that the plaintiff's claim for refund would be dissallowed on the ground that the amount of $199,450.91, his valuation of 33 (32, in fact) annuity contracts had been omitted from the plaintiff's above mentioned federal estate tax return and that upon a redetermination the above mentioned sum was includible in the gross estate, resulting in an underpayment of federal estate tax in the amount of $34,-490.01, rather than an overpayment as claimed by plaintiff. (For the purpose of this litigation the parties agree that such figures for the valuation of the annuity contracts and for the amount of the alleged deficiency are correct [Stip., par. 9].)

8. The plaintiff's claim for refund was formally disallowed by the Commissioner of Internal Revenue by letter dated March 21, 1944 (Stip., par. 10). (At the pre-trial conference the parties agreed that at the time of the final determination of a tax deficiency by the Commissioner due to his inclusion in the gross estate of the annuity contracts, the assessment of such deficiency was barred by the applicable statute of limitations.)

9. The annuity contracts in question, 32 in number, were all purchased by the decedent during his lifetime and prior to March 3, 1931 from the following insurance companies: Travelers Insurance Company, Aetna Life Insurance Company, Prudential Insurance Company and Phoenix Mutual Life Insurance Company (Stip., pars. 11 and 12).

10. All such annuity contracts were of substantially the same type; single premium, survivorship annuity contracts providing for an annual annuity payment in a fixed amount to the decedent, Henry W. Williams, during his lifetime, and, upon his death, to his wife, Annie S. Williams, during her lifetime, if she should survive him, except that the Phoenix contracts provided for payments of the annuity, semi-annually (Stip., pars. 12, 13, 13A, 14, 14A, 15, 15A, 16 and 16A).

11. In correspondence with the attorney for the executor, all of the insurance companies issuing such annuity contracts quoted the premium which would have been charged if the annuity had been on the life of Henry W. Williams only, which in all cases was less than the single premium charged for the contract issued (Stip., Exhibits J, K, L, M and N).

12. Photostatic copies of all the annuity policies in question[1] were exhibited to the Commissioner when he was engaged in auditing the return prior to the expiration of the statutory period of limitation in which a deficiency assessment could be made (Stip., Exhibit O).

## Discussion

The issues principally raised by this litigation present an excursion into the vicissitudes of federal estate taxation emanating from May v. Heiner[2] through the Hallock[3] and Church[4] cases and culminating in the

1. We make this assumption although Exhibit O (two letters dated December 1, 1938 and December 22, 1938) merely refer to "insurance policies" without enumeration.

2. 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826.

3. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 44, 84 L.Ed. 604.

4. Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288.

Technical Changes Act of 1949, c. 720, 63 Stat. 891. In addition the plaintiff questions the efficacy of the Collector's defense to this refund suit by way of "set off" or "equitable recoupment"[5] after the assessment of such an alleged deficiency was barred by the applicable statute of limitations.

The applicable statute was amended in 1931 and again in 1932 (substantially similarly) by incorporating therein additional language relative to the reservation of a life interest in property transferred.[6] This amendment was occasioned by the holding of the Supreme Court in May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, (and followed in three per curiam decisions)[7] that the retention by the grantor of an irrevocable trust of the income for life was alone not sufficient to render the transfer taxable under § 302(c) as one intended to take effect in possession or enjoyment at or after death. In Hassett v. Welch, 1938, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858, the Supreme Court held that this amendment was not intended to apply to transfers made before its adoption. Since the annuity contracts in the instant case were issued prior to March 3, 1931, the date of the Joint Resolution incorporating the first amendment to § 302(c) of the Revenue Act of 1926, the provisions of this "possession and enjoyment" section must be construed without the application of the language added by the amendment. See, Commissioner of Internal Revenue v. Estate of Church, 1949, 335 U.S. 632, 640, 69 S.Ct. 322, 337, 93 L.Ed. 288.

This apparent dichotomy in the interpretation of "possession and enjoyment" which had necessitated the 1931 amendment was obliterated when the Supreme Court on January 17, 1949 promulgated its decision in Commissioner of Internal Revenue v. Estate of Church, supra. This case overruled May v. Heiner, supra, and held that it was no longer properly interpretative of the clause in § 302(c) relating to transfers intended to take effect in possession or enjoyment at or after death, and that henceforth the philosophy of Helvering v. Hallock,[8] 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, should prevail. This repudiation of May v. Heiner removed any doubt that joint ownership annuities were includible in the gross estate under § 302-(c) and a fortiori eliminated any necessity for determining whether they were includible therein under the general "possession and enjoyment" clause or only by reason of the phraseology added by the 1931 amendment relating to the reservation of a life interest in the property transferred. Such a determination would have been a useless gesture. See Higgs' Estate v. Commissioner, 3 Cir., 1950, 184 F.2d 427, 430.

5. These terms are used in this opinion in a descriptive sense only without any technical implication.

6. § 302(c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516, and by § 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, reads in part as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value. * * * of all property, *. * *.

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * intended to take effect in possession or enjoyment at or after his death, *or, of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for* *any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property* * * *."* The italicized words indicate the additions made by the amendments to § 302(c) of *the Revenue Act of 1926.* The analagous section in the Internal Revenue Code, 26 U.S.C. is now § 811(c).

7. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 and McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413.

8. Justice Black, speaking for the majority in the Church case, held that the Hallock and May v. Heiner holdings and opinions were irreconcilable, although the dissenting opinions, including one by the writer of the Hallock opinion, vigorously challenged this contention.

Previously, the Board of Tax Appeals, in two cases, had held pre-1931 joint survivorship annuities not includible in the gross estate on the authority of May v. Heiner. Chemical Bank & Trust Co. v. Commissioner, 1938, 37 B.T.A. 535, appeal dismissed without opinion January 3, 1939 (C.A. 2); Hariot Reynolds Schultz v. Commissioner, 1939, 38 B.T.A. 59. In cases involving the purchase after March 3, 1931 of a joint-survivorship annuity the courts, in holding such an annuity includible in the gross estate, had relied not only on the added phraseology in § 302(c) relating to the reservation of the life interests but also upon the general provision relating to the necessity of survivorship. This was accomplished by applying the philosophy enunciated in the Hallock case, supra, even without the benefit of the Church decision overruling May v. Heiner. See, Higgs' Estate v. Commissioner, supra, 184 F.2d at page 430, with reference to Commissioner of Internal Revenue v. Wilder's Estate, 5 Cir., 118 F.2d 281, certiorari denied 314 U.S. 634, 62 S.Ct. 67, 86 L.Ed. 509; Commissioner of Internal Revenue v. Clise, 9 Cir., 122 F.2d 998, certiorari denied 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218; Mearkle's Estate v. Commissioner, 3 Cir., 129 F.2d 386.

But, the effect of the Supreme Court's holdings in the Church case and its companion, Estate of Spiegel v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, was changed in part through the subsequent amendment of § 811(c) of the Internal Revenue Code by § 7 of the Technical Changes Act of 1949, supra, which was a direct result of these decisions[9] and which plaintiff submits should compel this court to reject the Collector's asserted set-off. The pertinent provisions are as follows:

"Sec. 7. Transfers Taking Effect at Death.

"(a) Section 811(c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

"'(c) Transfers in Contemplation of, or Taking Effect at, Death.—

"'(1) General rule.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

*   *   *   *   *   *

"'(B) Under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property * * *; or

"'(C) intended to take effect in possession or enjoyment at or after his death.

"'(2) Transfers taking effect at death—transfers prior to October 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer * * *.'

"(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of Section 811(c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

"(1) a transfer made prior to March 4, 1931; * * *."

9. S. Report No. 831, 81st Cong., 1st Sess., 1949, U.S.C.Cong.Serv., vol. 2, p. 2179.

Section 7(b) specifically limits the retroactive application of the amendment made by Section 7(a) to the estates of decedents dying after February 10, 1939, the date of the enactment of the Internal Revenue Code. Since the plaintiff's decedent died prior to that date this amendment would not be applicable to him so as to exempt the annuities from inclusion in the decedent's gross estate. While the plaintiff concedes that the statute and even the Congressional Committee Reports [10] specifically incorporate such a limitation yet it urges that this limitation is inconsistant with the primary Congressional intention not to apply the Church case retroactively at all and that a reading of the entire Section 7 of the Technical Changes Act supports this view. While an overall reading of the Committee Reports generally lends credence to plaintiff's contentions and, admittedly, there does not appear to be any justifiable basis for applying the Church doctrine retroactively only to decedents dying prior to February 11, 1939, yet the remission of taxes is solely within the legislative power. When Congress places a specific limitation in a statute upon the remission of taxes, it is beyond the province of the Court to extend the exemption granted therein either by interpretation or implication. In such circumstances it is our duty to give effect to the legislative intent as expressed in the clear and unmistakable language of the statute. See Crossett Western Co. v. Commissioner, 3 Cir., 155 F.2d 433, 438, certiorari denied 329 U.S. 729, 67 S.Ct. 84, 91 L.Ed. 631. We are obliged to follow the rule that the use by a legislative body of words having definite meanings creates no ambiguity and that such words are to be taken and understood in their plain, ordinary and popular sense. The plain words and meaning of a statute cannot be overcome by legislative history. Gemsco, Inc., v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; Helvering v. City Bank

Farmers Trust Co., Trustee, 296 U.S. 85, 89, 56 S.Ct. 70, 80 L.Ed. 62.

Plaintiff nevertheless suggests that a construction of the Technical Changes Act is possible which would make the Church decision inapplicable to its situation despite the specific limiting date. It contends that Congress did not intend that the general language of § 811(c) (1) (C) of the Code ("intended to take effect in possession or enjoyment at or after his death") should encompass transfers with a retained life estate, as was held in the Church case, but that Congress merely made § 811 (c) (1) (B) (the "retained life estate" section originally added by the Joint Resolution of March 3, 1931) in § 7(b) of the Technical Changes Act inapplicable to decedents who made transfers prior to March 4, 1931.[11] It submits that unless the two clauses are mutually exclusive the Church case would be good law for all prior years and § 7(b) would be a nullity since § 811(c) (1) (C) would remain applicable to all pre-1931 transfers, even though § 811(c) (1) (B) is not. This construction of the act, in effect, would directly overrule by legislation the interpretation in the Church case of the general "possession or enjoyment" clause in revenue statutes antedating March 4, 1931 and would perpetuate the May v. Heiner interpretation beyond the power of the court to change it. This interpretation accordingly would exclude the retained right to a life income from pre-1931 annuities as a transfer includible under the general possession or enjoyment language of § 302(c).

This attempted construction of the act, though ingenious, is extremely awkward, and disregards the manner in which Congress ameliorated retroactively the effects of the Church case. Contrary to plaintiff's contention, there is no nullity in § 7(b) of the act if the interpretation in the Church case of § 811(c) (1) (C) applies and the two clauses are construed as not mutually exclusive.

10. See Conf. R. No. 1412, 81st Cong., 1st Sess., 1949, U.S.C.Cong.Serv., vol. 2, p. 2184.

11. Cf. Justice Reed dissenting in the Church case, 335 U.S. at page 659, 69 S.Ct. at page 341, with reference to the Joint Resolution of 1931.

Under § 811(c) (2) any transfer made before October 7, 1949 was excluded from subsection (c) (1) (C)—the general possession and enjoyment clause—unless there had been retained an expressed reversionary interest valued in excess of 5 per cent of the transferred property. The only qualification thereon was the limitation of this amendment in § 7(b) of the act to estates of decedents dying after February 10, 1939. While the third sentence of § 7(b) made subsection (c) (1) (B)—the "retained life estate" clause—inapplicable to a pre-1931 transfer in case of a decedent dying prior to January 1, 1950, this was dictated, in part, by the fact that Congress in the second sentence[12] recognized the effect of the Church case and indicated that it would be applicable except as otherwise specifically provided. Thus § 7(b) is not a nullity, since it limits the exemption granted by (c) (2). For example, a pre-1931 transfer with a retained life estate excludible from (c) (1) (C) by (c) (2) would be excludible from (c) (1) (B) only in case of a decedent dying prior to January 1, 1950. Thus it would appear that these two clauses are not mutually exclusive. See, Higgs' Estate v. Commissioner, supra.

The plaintiff's construction of the Technical Changes Act was impliedly rejected by the Court of Appeals for the Second Circuit in Pruyn's Estate v. Commissioner, 184 F.2d 971. In this case the Tax Court on the basis of the Church decision, (and prior to the passage of the Technical Changes Act), had included a joint survivorship annuity purchased prior to 1931 in the gross estate of a decedent dying in 1943. The Court of Appeals in reversing the Tax Court relied on § 811(c) (2) as changing the effect of the Church case with respect to persons dying after February 10, 1939. The obvious implication is that this court would have construed a joint survivorship annuity purchased prior to 1931 as includible under the general possession and enjoyment clause in the absence of the so-called relief § 811(c) (2). If plaintiff's interpretation is valid, that such annuities are includible only by reason of the provision relating to "retained life estates", the court would merely have referred to the sentence in § 7(b) of the act making § 811(c) (1) (B) inapplicable to such transfer.

Admittedly this limited application of amended § 811(c) of the Internal Revenue Code in alleviating the effect of the Church case may produce a harsh result in the instant matter[13] for, as previously suggested, there apparently appears to be no justifiable basis for a differentiation as to decedents dying before February 11, 1939, but we cannot ignore the specific limitation in the statute even for the exigency of a hard case. See Deputy v. Du-Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416; Crossett Western Co. v. Commissioner, supra.

The plaintiff further contends that the Commissioner of Internal Revenue is bound, by Treasury Regulations in effect now, and at the time of audit, not to include these annuities in the gross estate. However, T. D. 5741 which provides that the Church decision would not be applied to decedents dying on or before January 17, 1949, amends and is embodied in Treasury Regulation 105, § 81.17 which relates only to estates of decedents dying after February 10, 1939. Insofar as the regulations effective at the time of audit may have excluded these annuities on the basis of May v. Heiner, the Supreme Court has indicated that the Treasury is not bound by its regulations made under compulsion of decisions of that Court. See, Commissioner of Internal Revenue v. Estate of Church, supra, 335 U.S. at page 647, 69 S.Ct. at page 330; Helvering v. Hallock, supra, 309 U.S. at page 121, 60 S.Ct. at page 452.

12. "The provisions of section 811(c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926." Subsection 7(b) of Act, supra.

13. Assuming arguendo that joint survivorship annuities purchased prior to March 4, 1931 would not have been includible in the gross estate prior to the Church case.

■ 'The plaintiff finally urges that since the doctrine of set-off or recoupment, which the Collector seeks to invoke in order to avoid the statute of limitations, is equitable in nature, this court should not, in its discretion, allow this defense because the Collector's position is grossly inequitable and unfair to the tax payer. The ·defendant relies on the well-established proposition of law enunciated in Lewis v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, that in acting upon a claim for refund based upon the disallowance of a particular deduction the Commissioner has authority to reaudit the return and to reject the claim if the redetermination does not show an overall overpayment even though the statute of limitations prevents him from making an additional assessment for the year involved. The Supreme Court, quoting with approval from the Court of Appeals opinion, stated:

> " ' * * * the ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax. This involves a redetermination of the entire tax liability. and while no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax.' " 284 U.S. at page 283, 52 S.Ct. at page 146.

■ While I agree that there appears no justification for holding these annuities taxable solely for the reason that the incident of death of the decedent occurred on January 30, 1936 instead of after February 10, 1939,[14] yet I feel that since Congress has specifically limited the retroactive application of the Church case, I should not require the defendant to present compelling equitable considerations to support a redetermination of the plaintiff's entire liability in this type of suit.[15]

Plaintiff cites McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46, as illustrative of cases where the government was denied the right to credit an underpayment in taxes barred by the statute of limitations against a subsequent overpayment in taxes. That case (and others cited by plaintiff) does not limit the holding in the Lewis case since it embodied an attempt by the government to recoup taxes barred by the statute of limitations where statutory provisions expressly deprived the government of this right. Furthermore, they do not stand for the proposition that the government must show strong policy considerations in unlocking the statutory bar upon a redetermination of the entire tax liability. Nor is the Commissioner's right to a set-off limited, as plaintiff contends, to recomputation of estate tax liability for the year 1936 in accordance with the "then existing [interpreted] law" under which these annuities may not have been subject to taxation. In the case of Tait v. Safe Deposit & Trust Co., 4 Cir., 70 F.2d 79, the Commissioner apparently attempted to set off against a refund sought by the taxpayer a deficiency claim arising out of the same estate tax return, which was barred by the statute of limitations. The Commissioner during the statutory period had not made such assessment because of an existing rule but had later changed his ruling because of a subsequent Supreme Court case. The Court indicated that the Commissioner, if his new ruling as to the assessment was correct, would be entitled to deduct from any recovery by the taxpayer the amount of tax properly computible up-

14. It should be noted that Congress has recently amended this Act in the Revenue Act of 1951 in §§ 607 through 609, 26 U. S.C.A. § 811 note, to cover certain hardship cases. See Senate Report No. 781, VIII, B, 2–4 (1951 U. S. Code Cong. Serv., pp. 2061, 2062.) Thus in § 607, the Technical Changes Act has been extended by providing that the determination of whether property transferred by a decedent dying after March 18, 1937 and before February 11, 1939 should be includ-

ed in his gross estate under § 302(c) of the Revenue Act of 1926 as a transfer intended to take effect in possession or enjoyment at or after death shall be made in conformity with Treasury Regulations in force at the time of his death.

15. That the application of the doctrine in Lewis v. Reynolds, supra, may otherwise be governed by equitable considerations, see Routzahn v. Brown, 6 Cir., 95 F.2d 766. Cf. Pacific Mills v. Nichols, D.C., 31 F.Supp. 43.

on such a redetermination and cited the Lewis case as authority therefor.

### Conclusions of Law

It follows, therefore,

(1) that the Commissioner of Internal Revenue properly disallowed the plaintiff's claim on the ground that there had been an actual underpayment of federal estate taxes in the amount of $34,490.01, and

(2) that the Collector is entitled to judgment in his favor that plaintiff's suit should be dismissed.

An order in conformity with this opinion should be settled.